STATE OF MAINE                                    SUPERIOR COURT
                                                   CIVIL ACTION
YORK, ss.                                    DOCKET NO: AP-03-069


ROBERT THIBEAULT,

                Petitioner

        v.


THE TOWN OF NEWFIELD,                        **ORDER**

                Defendant

and


KENDALL BAGGE,

                Party-in-interest


        This case comes before the Court on Robert Thibeault's 80B appeal of a decision

of the Town of Newfield Board of Appeals rescinding a September 19, 2003, stop work

order and issuing Mr. Bagge a variance. Following hearing, the appeal is Denied.

## BACKGROUND

        On July 21, 2003, Kendall Bagge filed an application for a building permit to

build an addition on his house, located at 19 Shepard Island Road on Balch Lake in

Newfield, Maine. The application included a site plan depicting an existing structure

with one wall parallel to and 1.84 feet from the lot line between Mr. Bagge's property

and the property of Mr. Thibeault, an abutting property owner. The plan proposed an

addition to be built parallel to the lot line and the same distance from it as the existing

structure. On July 24, 2003, the CEO issued a building permit on behalf of Mr. Bagge.

On August 5, 2004, Mr. Bagge began demolition of the end of his house, relocated portions of his septic system, excavated a foundation, and removed trees.

Although Mr. Thibeault admits that he was aware of Mr. Bagge's plans to build an addition on his house, he did not become aware of the construction until Labor Day weekend 2003, approximately one month after work began.[1] The day after Labor Day Mr. Thibeault confronted the CEO with concerns that the construction was on his property. On September 12, 2003, the CEO issued a stop work order to address the situation. He subsequently rescinded the stop work order when it was determined that the construction did not intrude on Mr. Thibeault's property. Mr. Thibeault then went to the Town Selectmen arguing that the building permit violated the set back provision of the Ordinance. The Town Selectmen concluded that the CEO had misinterpreted the setback provision of the Ordinance. The CEO agreed and issued another stop work order on September 19, 2003.

Mr. Bagge then filed a timely appeal to the Board of Appeals opposing the second stop work order. The Board rescinded the September 19, 2003, stop work order reasoning that the CEO's action to reinstate the stop work order was essentially an appeal of the first building permit, which was precluded by the thirty-day time limit for appeals. See Ordinance, Art. VII, § 2(D). At the same hearing, the Board granted Mr. Bagge's application for a variance. This appeal followed.

## DISCUSSION

Mr. Thibeault argues that although he did not appeal the issuance of the building permit to the Board within thirty days as prescribed by the Ordinance, good cause exists for the Court to extend the time for appeal. In response, Mr. Bagge argues that

---

[1] On February 3, 2003, Kendall Bagge filed an application with the Saco River Corridor Commission for permission to enlarge his house. Robert Thibeault was notified of this application but did not attend the Commission hearing or otherwise oppose the construction.

the line of cases extending appeal periods in ordinances requires some element of wrongdoing on the part of the permit holder, which is not found in this case. As such, he urges the Court to deny this appeal.

The Superior Court reviews the findings of the Board of Appeals "for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *Yusem v. Town of Raymond*, 2001 ME 61, P7, 769 A.2d 865, 869. The facts are not in dispute in this case. The only issue is whether a good cause exception applies to extend the time period for filing an appeal.

Ordinarily, the appeal period for a building permit is dictated by the time period established by the ordinance, which is generally prior to the start of construction. *Bracket v. Town of Rangely*, 2003 ME 109, ¶ 25, 831 A.2d 422, 430. This is particularly important because permit holders who are about to invest substantial sums in their property must know that they will not be sued after expending their money. *Id.* To further this goal, the Law Court maintains the following rule:

> "strict compliance with the appeal procedure of an ordinance is necessary to ensure that once an individual obtains a building permit, he can rely on that permit with confidence that it will not be revoked after he has commenced construction"

*Wright v. Kennebunkport*, 1998 ME 184, ¶ 18, 715 A.2d 162, 165.

The Court, however, has carved out a limited exception to this rule. Where strict application of the appeal period time limit of an ordinance would result in a "flagrant miscarriage of justice," the appeal period may be extended. *Bracket v. Town of Rangely*, 2003 ME 109, 831 A.2d 422. The good cause exception analysis focuses on a balance of the equities and the facts of each case to determine if extenuating circumstances exist to extend the appeal period. *Id.*, ¶ 24, 831 A.2d at 429. The Law Court has held that extenuating circumstances exist, warranting a good cause exception to the town's

appeal period, when 1) the town violates its ordinance, 2) the permit holder violates its permit, and 3) the abutter acts reasonably promptly. *Id.*, ¶ 25, 831 A.2d at 430.

In the instant case, it is undisputed that the Town violated its Ordinance when the CEO issued the building permit to Mr. Bagge. Furthermore, Mr. Thibeault acted reasonably promptly once he became aware of Mr. Bagge's construction. Although he did not appeal the CEO's decision to the Board, he immediately made his objections known to the CEO and then to the Town Selectmen.[2]

The only remaining question is whether the permit holder violated his permit. This is the crux of Mr. Bagge's case. He argues that the good cause exception cannot apply absent wrongdoing on the part of the permit holder.

In *Brackett*, the building permit required the new construction to be forty-eight-plus feet from the shore. *Brackett*, 2003 ME 109, ¶ 20, 831 A.2d at 428. However, the permit holder knowingly constructed it thirty-eight feet from the shore. *Id.* Further, the permit holder constructed a deck and a full basement, which was not authorized under the permit. *Id.* Contrary to *Brackett*, there are no allegations that Mr. Bagge violated his permit. Rather, the Board found that the building constructed by Mr. Bagge conforms in all material respects to the building depicted in the drawings he submitted with his application for the permit.

The term "extenuating circumstances" as used in *Brackett* suggests something very much out of the ordinary. Mr. Thibeault, however, is asking this Court to apply the *Brackett* exception in cases when an abutter fails to file a timely appeal because he is out of state and unaware that construction on the neighbor's property has begun.

---

[2] In *Brackett*, the abutters immediately made their objections known to the town and filed an appeal within thirty days of their actual knowledge of the construction. Here, although Mr. Thibeault immediately made his objections known to the Town, via the CEO and Selectmen, he never filed an appeal with the Board. However, the case came before the Board because Mr. Bagge filed an appeal of the Selectmen's stop work order. Because of the unique posture of this case, Mr. Thibeault's immediate objections to the construction satisfies element three of the good cause exception analysis.

Given the abundance of seasonal homes in Maine, this situation is likely to occur with some frequency and the exception asserted by Mr. Thibeault would quickly swallow the rule.

The final aspect in this equity analysis is whether Mr. Bagge's construction has or will negatively impact Mr. Thibeault's property. At the hearing before the Board, the CEO testified that when standing on the building site on Mr. Thibeault's property, only the roof of Mr. Bagge's house was visible.[3] Moreover, Mr. Thibeault does not assert any particular negative impact on his property other than the failure of the CEO to follow the Ordinance and provide him with notice. This alone does not tip the equities in his favor.

The entry is as follows:

Mr. Thibeault's 80B appeal is Denied and the Decision of the Board of Appeals is Affirmed.

DATE: _6/12/06_

_____
G. Arthur Brennan
Justice, Superior Court

**PLAINTIFF:**
JOHN C BANNON ESQ
JOHN SHUMADINE ESQ
MURRAY PLUMB & MURRAY
PO BOX 9785
PORTLAND ME   04104-5085

**DEFENDANT - TOWN OF NEWFIELD:**
LEAH B. RACHIN, ESQ.
BERGEN & PARKINSON
62 PORTLAND RD
KENNEBUNK ME   04043-6658

**PARTY-IN-INTEREST: KENDALL BAGGE**
THOMAS VAN HOUTEN ESQ
469 MAIN ST SUITE 101
HERITAGE PLACE
SPRINGVALE ME   04083

---

[3]     The minutes of the hearing further explain that from the boundary line between the two properties, Mr. Thibeault's property slopes up at a steep gradient.